UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: RAH COLOR TECHNOLOGIES LLC PATENT LITIGATION | Case Nos. 18-md-02874-SI<br>18-cv-07465-SI |
| | **ORDER GRANTING IN PART AND DENYING IN PART RAH'S MOTION TO DISMISS EFI'S SECOND AMENDED COMPLAINT** |
| | Re: Dkt. Nos. 54 (18-md-02874-SI)<br>64 (18-cv-07465-SI) |
| This Order Relates to:<br><br>*Electronics for Imaging, Inc. v. RAH Color Technologies LLC*, Case No. 18-cv-07465-SI | |

RAH Color Technologies LLC ("RAH") has filed a motion to dismiss the second amended complaint by Electronics for Imaging, Inc. ("EFI"), which seeks declaratory judgment of non-infringement of four patents held by RAH. Dkt. No. 64.[1] On May 23, 2019, the Court held a tutorial and heard argument on the motion to dismiss. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the motion.

**BACKGROUND**

On March 14, 2018, plaintiff EFI filed this action against defendant RAH seeking a

---

[1] Unless otherwise noted, citations to the docket throughout this Order refer to the docket sheet in Case No. 18-cv-7465 rather than to the master docket sheet in the multidistrict litigation ("MDL").

declaration of non-infringement of several patents owned by RAH in the field of color management technology. Dkt. No. 1. RAH filed a motion to dismiss for lack of jurisdiction, and the case was assigned to Judge Orrick of this district. Dkt. Nos. 11, 13. Before briefing on the motion to dismiss was complete, EFI filed an amended complaint. *See* Dkt. No. 18. RAH then moved to dismiss the amended complaint, arguing there was no personal jurisdiction in California and that the amended complaint did not identify with particularity the precise products that EFI claimed did not infringe the patents in issue. Dkt. No. 21. On October 24, 2018, Judge Orrick granted RAH's motion to dismiss for lack of personal jurisdiction and, in light of that ruling, refrained from ruling on RAH's argument regarding whether the amended complaint satisfied pleading standards. Dkt. No. 39. On November 14, 2018, Judge Orrick transferred the case to the United States District Court for the Eastern District of Virginia. Dkt. No. 43.

In December 2018, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case, along with several infringement actions brought by RAH, to this Court for coordinated pretrial proceedings as part of an MDL. *See In Re: RAH Color Technologies LLC Patent Litigation*, MDL No. 2874, Dkt. No. 1. The JPML found that coordinated proceedings were warranted because "[a]ll actions involve factual questions about the alleged infringement, validity, and enforceability of nine related patents owned by RAH in the field of color management technology, which is used in products such as print servers, printers, and color imaging software." *Id.* at 1. The JPML further explained, "In general terms, color management includes functions such as creating and editing color images on a computer, rendering precise colors on video displays, and facilitating printing in precise consistent colors." *Id.* at 1 n.2.

On April 4, 2019, this Court held an initial case management conference with all of the parties to the MDL. The resulting pretrial order (Pretrial Order No. 2) ordered, in relevant part, that EFI file its second amended complaint no later than April 11, 2019, and that RAH answer or otherwise respond to the second amended complaint no later than April 25, 2019. *See* Dkt. No. 61.

EFI filed its second amended complaint ("SAC") on April 11, 2019. Dkt No. 63. In it, EFI alleges that RAH "has accused and sued EFI's customers, alleging patent infringement based on their manufacture, use, sale, offer for sale, and importation of EFI's products." *Id.* ¶ 5. The SAC

2

cites to the following suits for direct infringement that RAH filed against EFI's customers: a September 17, 2015 lawsuit against Ricoh Americas Corporation; a June 30, 2017 lawsuit against Quad Graphics, Inc.; and a September 20, 2017 lawsuit against Xerox Corporation. *Id.* ¶¶ 20, 26, 32. The SAC seeks a declaratory judgment of non-infringement of United States Patent Nos. 6,995,870 ("the '870 patent"); 7,729,008 ("the '008 patent"); 8,416,444 ("the '444 patent"); and 8,760,704 ("the '704 patent").

On April 18, 2019, RAH filed the present motion to dismiss EFI's second amended complaint. Dkt. No. 64 ("Mot."). RAH argues that the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) based on lack of subject matter (declaratory judgment) jurisdiction. *Id.* at 7. EFI opposes, and RAH has filed a reply brief. Dkt. Nos. 65 ("Opp'n"), 66 ("Reply").

## LEGAL STANDARD

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A district court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (citations omitted). To determine whether jurisdiction exists, the party invoking jurisdiction must point to "some affirmative act by the patentee" that forms the basis for an actual controversy between the parties. *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1338-39 (Fed. Cir. 2008). The "affirmative act" necessary to sustain declaratory judgment jurisdiction can arise in "a variety of ways, for example, by creating a reasonable apprehension of an infringement suit, . . . demanding the right to royalty payments, . . . or creating a barrier to the regulatory approval of a product that is necessary for marketing[.]" *Id*. at 1339 (citations omitted). The party invoking jurisdiction has the burden of establishing the court's jurisdiction. *Microsoft Corp. v. DataTern,*

3

*Inc.*, 755 F.3d 899, 907 (Fed. Cir. 2014).

**DISCUSSION**

RAH argues that no real, immediate controversy exists between the parties regarding the four patents-in-suit sufficient to sustain declaratory judgment jurisdiction. As to the '444 and '704 patents, it argues that EFI's SAC relates only to the non-method claims, and that because RAH never notified EFI about the patents before they expired or marked its products, RAH cannot recover damages from EFI on these non-method claims. As to all patents-in-suit, RAH argues that EFI has not pleaded sufficient facts to allege the elements of indirect infringement.[2]

**I.     Method vs. Non-Method Claims ('444 and '704 Patents)**

RAH argues that the Court lacks declaratory judgment jurisdiction over the '444 and '704 patents because it says EFI seeks relief only as to non-method claims, and that for RAH to recover damages it would therefore have had to notify EFI about the patents before the patents expired, which RAH says it did not do.[3] RAH cites to the non-method, independent claims asserted in the SAC as: claims 11 and 41 of the '444 patent, and claims 11 and 29 of the '704 patent.

EFI argues that there is a controversy regarding direct infringement of the '444 and '704 patents. First, it states that RAH has asserted method claims from the '444 and '704 patents against EFI customers. "Because RAH's claims against EFI's customers are based on the same activities EFI performs regarding its accused products," EFI argues, "RAH effectively has charged EFI with

---

[2] In its motion, RAH makes two additional arguments that are now moot. RAH argues that EFI cannot allege jurisdiction based on an obligation to indemnify its customers because it has not pleaded that it has a duty to indemnify. EFI clarifies in opposition that it is not alleging jurisdiction based on a duty to indemnify. Opp'n at 9 n.2. RAH also argues that EFI should have followed Federal Rule of Civil Procedure 41 to drop its claim regarding U.S. Patent No. 7,312,897, which was at issue in the amended complaint but is no longer at issue in the SAC. In its reply brief, RAH concedes that a Rule 41 stipulation of dismissal is not required to dismiss a specific patent in a multi-patent case and so withdraws this part of its motion. Reply at 6 n.1.

[3] RAH states, and EFI does not dispute, that the '704 and '444 patents expired on February 26, 2016; that the '008 patent expired on December 17, 2016; and that the '870 patent expired on May 7, 2017. *See* Mot. at 2 & n.2.

4

direct infringement, including method claims . . . ." Opp'n at 9. Likewise, EFI states that its SAC "makes clear that it seeks a declaration of non-infringement of the '444 and '704 *patents*, including any method claims previously asserted against its customers as well as non-method claims previously asserted." *Id.* at 10.

"The availability of damages in an infringement action is made contingent upon affixing a notice of patent[, or 'marking,'] to the protected article." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989) (citing 35 U.S.C. § 287). 35 U.S.C. § 287 reads, in part:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). However, "[t]he law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) (citations omitted). This is so because, "ordinarily, where the patent claims are directed to only a method or process there is nothing to mark." *Id.*

EFI states that, contrary to RAH's characterization, EFI is seeking a declaration of non-infringement of *method claims* of the '444 and '704 patents in addition to the non-method claims. EFI points to language in its SAC that refers to RAH's "patents" rather than to specific claims. Opp'n at 10 (citing SAC ¶¶ 77-78, 86-87). EFI argues that it used non-method claims in the SAC as examples only, and that its complaint is not limited to those non-method claims. In *Comcast Cable Communications*, Judge Alsup of this district explained that, following the abrogation of Form 18 on December 1, 2015, a complaint "must . . . set forth factual allegations showing *how* each accused product or service specifically does not meet <u>at least one claim limitation</u>, such that it does not infringe the asserted patent . . . ." *Comcast Cable Commc'ns, LLC, v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017) (underlining added). "To be clear, to plead a claim for declaratory judgment of non-infringement, [the plaintiff] needs only to allege facts sufficient to support *one* plausible basis therefor." *Id.* at 275.

Here, EFI has alleged that RAH accused EFI's customer Ricoh of infringing both method and non-method claims of the '444 patent. For instance, it alleges in the SAC that RAH accused

5

Ricoh of infringing "at least claims 11, 13, 20, 29-34, 36-38, 40-43, 45, 49-56, 58-60, and 63-72 of the '444 patent." SAC ¶ 23.[4] Even if later in the complaint EFI expounds on RAH's allegations against EFI's customers by explaining how EFI's products do not infringe independent claims 11 and 41 and dependent claims 15, 20, and 42 (all non-method claims), it does so by way of example. *See id.* ¶ 72. EFI couches its allegations in the terms "for example," "by way of non-limiting example," and "for at least this reason," to illustrate how its products do not infringe on claims 11, 15, 20, 41, and 42 of the '444 patent. *See id.* ¶¶ 73-77. EFI makes similar allegations regarding non-infringement of the '704 patent. It alleges that RAH accused Ricoh and Quad/Graphics, Inc. of infringing both method and non-method claims, *see id.* ¶¶ 13, 24, 30, and then cites to certain non-method claims to illustrate how EFI does not infringe those claims. *See id.* ¶¶ 82-85. In its prayer for relief, EFI seeks a declaration that its accused products do not and have not infringed the '444 and '704 patents rather than limiting the relief to certain claims of those patents. *Id.* at 25. Reading the complaint as a whole, the Court disagrees with RAH's characterization that EFI seeks declarations that EFI does not infringe only non-method claims of these patents. Because the relief EFI seeks includes a declaration of non-infringement of the method claims of the '444 and '704 patents, and because the requirements of Section 287 do not apply to method claims, there is a live case or controversy regarding non-infringement of the '444 and '704 patents.

RAH additionally argues in its reply that even if EFI did plead method claims, that would not create a basis for damages because, according to RAH, where non-method and method claims are pleaded together, "marking limits the damages period for both the method and non-method claims." Reply at 6. RAH states that there was no marking, and thus damages remain unavailable even for the method claims of the '444 and '704 patents. In *American Medical Systems*, the Federal Circuit held that where "both apparatus and method claims . . . were asserted *and there was a physical device produced by the claimed method that was capable of being marked*[,]" the patentee was required to mark its product in order to recover damages under its method claims in the absence

---

[4] Earlier in the SAC, EFI alleges that, as to the '444 patent, "Claims 1-10, 34-73 are directed to apparatus/computer-readable medium claims, claims 29-33 are directed to method claims, and claims 11-28 are directed to system claims." SAC ¶ 12.

6

of actual or constructive notice to the infringer. *Am. Med. Sys.*, 6 F.3d at 1539 (emphasis added). Such is not the situation here. A review of the '444 and '704 patents shows that the method claims of those patents did not produce a physical device that was capable of being marked. At the hearing on the motion to dismiss, RAH confirmed as much. Thus, RAH is incorrect that EFI's assertion of non-infringement of method and non-method claims together carried with it a marking requirement as to the method claims.[5]

Because RAH could potentially seek damages from EFI for infringement of the '444 and '704 patents, there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" as to warrant this Court's jurisdiction over the patents. *See MedImmune*, 549 U.S. at 127. Accordingly, the Court DENIES that part of RAH's motion seeking to dismiss the '444 and '704 patents based on an alleged lack of case or controversy regarding method claims. Should facts come to light later in this case that alter RAH's ability to seek damages on these patents, RAH may file an appropriate motion with the Court.

## II. Indirect Infringement (All Patents-in-Suit)

RAH also argues that EFI's claims regarding all four patents-in-suit should be dismissed because EFI has failed to adequately plead the elements of indirect infringement, whether induced or contributory.

### A. Induced Infringement

RAH argues that the Court should dismiss the claims in the SAC for induced infringement, with leave to amend if appropriate, because EFI has failed to allege the requisite knowledge. RAH argues that "[i]f EFI did not have knowledge of RAH Color Technologies['] infringement theories before the patents expired, the SAC should be dismissed with prejudice as to the declaration

---

[5] RAH further states that EFI does not deny that the SAC includes non-method claims and argues that those must be dismissed for lack of jurisdiction. Reply at 5. EFI, however, argues that RAH has not conceded it did not comply with Section 287 and that RAH or its licensees may have marked products. Opp'n at 10-11. The Court finds the factual record on RAH's marking insufficient to justify dismissal of all non-method claims at this stage. This ruling does not preclude RAH from renewing its motion later in the case on a fuller factual record.

regarding induced infringement." Mot. at 15. EFI disagrees, relying heavily on *DataTern* to argue that RAH applies the wrong legal standard and that "an explanation of infringement is not necessary for there to be a controversy regarding indirect infringement." Opp'n at 15. EFI also argues that it has made sufficient factual allegations, given its allegations regarding RAH's suits against EFI customers.

In *DataTern*, the Federal Circuit explained that when evaluating the sufficiency of complaints seeking declaratory judgment of no indirect infringement, courts must "look to the elements of the potential cause of action." 755 F.3d at 905 (citing *Arris Grp., Inc., v. British Telecomms. PLC*, 639 F.3d 1368, 1376-78 (Fed. Cir. 2011)). The court further explained, "Certainly it is not the case that definitive proof must exist that would establish each element. But, to establish a substantial controversy regarding inducement, there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that such a claim could be brought." *Id.* "To prove inducement of infringement, unlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Id.* at 904 (citing *Global-Tech Appliances, Inc., v. SEB S.A.*, 563 U.S. 754, 765-66 (2011)).

Applying this approach, the *DataTern* court found the district court had declaratory judgment jurisdiction over some of the suppliers' claims regarding induced infringement. The court looked to the underlying claim charts used in the lawsuits by the patentee against the suppliers' customers. The court found jurisdiction where the claim charts alleged direct infringement based on the customers' use of the supplier's product *and* where the "claim charts cite to [the supplier]-provided user guides and documentation for each claim element." *Id.* at 905. "In other words," the court explained, the "claim charts show that [the supplier] provides its customers with the necessary components to infringe the . . . patents as well as the instruction manuals for using the components in an infringing manner. Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement." *Id.* However, the *DataTern* court found no declaratory judgment jurisdiction as to one of the patents and the other supplier (Microsoft), because the claim charts "cite exclusively to third-party—not Microsoft provided—documentation for

8

several key claim limitations." *Id.* In a footnote, the court explained, "For example, no claim chart cites to Microsoft provided documentation for the 'defining' and 'forming' steps, which are at the center of the parties' dispute over infringement." *Id.* at 905 n.3.

Here, the allegations of the SAC are insufficient to establish the Court's declaratory judgment jurisdiction over claims of induced infringement. Although EFI makes various allegations regarding the claim charts that RAH provided to the customers that RAH sued, *see, e.g.*, SAC ¶¶ 28, 41-42, EFI does not attach the claim charts themselves. Nor does EFI allege more detail than simply listing how many references to EFI's products or product literature the claim charts contain. For instance, the SAC alleges that in the final infringement contentions RAH served on Xerox, the claim charts regarding the '870 and '008 patents refer to EFI or its products or product literature "69 times in 35 pages purportedly to show that the claim limitations of asserted claims in the '870 and '008 patents are found in the accused EFI print servers and software." *Id.* ¶ 41. This is not enough to establish a reasonable potential that RAH could bring a claim against EFI for indirect infringement.

As the Federal Circuit made clear in *DataTern*, simply because a patentee has accused customers using a supplier's product of infringing certain claims, this does not "automatically give rise to a case or controversy regarding induced infringement" by the supplier. 755 F.3d at 904. By way of example, the court explained, "suppose that the accused product was capable of multiple uses and there was no evidence or allegation that the manufacturer encouraged the use accused of infringement." *Id.* at 904 n.2. Here, mere references to the supplier's products in the underlying lawsuits against the customers will not suffice, no matter how numerous the references. Rather, there must be allegations that rise to the level of showing a reasonable potential that the patentee has a claim against the supplier for induced infringement. "[S]imply selling a product capable of being used in an infringing manner is not sufficient to create a substantial controversy regarding inducement." *See id.* at 905.

The district court cases on which EFI relies do not dictate otherwise. For instance, in *UCP International Company Limited v. Balsam Brands Inc.*, 252 F. Supp. 3d 828 (N.D. Cal. 2017) (Orrick, J.), the patentee admitted that its claims of direct infringement against the supplier's customer were "based *solely* on its selling [the supplier's product], something [the supplier] itself

9

did." *Id.* at 834 (emphasis added). Moreover, the claim charts in the suit against the customer "referred only to [the supplier's product] and explained how [the patentee] believed [the product] met each and every claim of [the patentee's] patents." *Id.* at 833. Thus, the direct infringement suit against the customer was also evidence of a direct infringement claim against the supplier, and there was declaratory judgment jurisdiction. Judge Orrick distinguished cases where the suits against the customers "all involved use claims, where the patentees alleged that some of [the suppliers'] customers infringed their patents by using the companies' products." *Id.* at 834. In such cases, "it was not evident that [the suppliers] would face any infringement liability since simply selling their products would not constitute direct infringement and would not necessarily result in indirect infringement liability." *Id.* Here, the Court likewise cannot conclude based on the facts of the SAC that the use of EFI's products in the customers' products would necessarily result in indirect infringement.

This is not to say, however, that the Court agrees with RAH's position that EFI must allege that it "had knowledge of RAH Color Technologies['] infringement theories before the patents expired[.]" *See* Mot. at 15. RAH disregards the distinction between what a declaratory judgment plaintiff must plead as contrasted to what a patentee must plead when it sues for infringement. Holding these pleadings to the same standard "would subvert the purpose of declaratory judgment actions. . . . It would seem convoluted to require a declaratory-judgment plaintiff to plead facts that would show their liability when the exact purpose of the declaratory action is to state that there is no liability." *Safenet, Inc. v. Uniloc USA, Inc.*, No. 15-cv-97-RWS-KNM, 2015 WL 7272196, at *2 (E.D. Tex. Nov. 17, 2015). At the pleading stage, the declaratory judgment plaintiff must simply "show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune*, 549 U.S. at 127). As the *DataTern* court found, a supplier suing for declaratory judgment of no induced infringement could meet this standard by providing claim charts that allege direct infringement by the supplier's customer and that cite to supplier-provided "user guides and documentation for each claim element." 755 F.3d at 905.

Because the SAC does not do this, the Court concludes that the SAC fails to establish a case

or controversy regarding induced infringement. As it is possible EFI can amend its complaint to plausibly plead the requisite elements of induced infringement, the Court will GRANT the motion to dismiss these claims, with leave to amend **no later than June 21, 2019.**

### B. Contributory Infringement

RAH argues that EFI makes no real attempt at alleging contributory infringement and that the claim must fail because EFI does not allege that its product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." Mot. at 13 n.6 (citing 35 U.S.C. § 271(c)). EFI responds that there is jurisdiction over its claim regarding contributory infringement because "RAH alleges that EFI's customers use its Fiery print server, command Workstation and Color Profiler Suite (the purported infringing components) so as to infringe its patents[,]" and that RAH has therefore also alleged contributory infringement by EFI. Opp'n at 14.

In *Arris*, the Federal Circuit explained:

> Pursuant to § 271(c) of the Patent Act, an act of contributory infringement may include either the sale of a "component of a patented machine, manufacture, combination or composition" (including a component used in a claimed system), or the sale of a "material or apparatus for use in practicing a patented process." . . . To hold a component supplier liable for contributory infringement, a patent holder must show, inter alia, that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted "a material part of the invention"; (c) the supplier knew its product was "especially made or especially adapted for use in an infringement" of the patent; and (d) the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use."

*Arris*, 639 F.3d at 1376 (citing 35 U.S.C. § 271(c); *Wordtech Sys., Inc., v. Integrated Networks Sol'ns, Inc.*, 609 F.3d 1308, 1316-17 (Fed. Cir. 2010)). In determining whether it has declaratory judgment jurisdiction over a claim of contributory infringement, a court must analyze each element required of that claim. *DataTern*, 755 F.3d at 903.

Here, the SAC refers to contributory infringement only in the context of the following statement: ". . . there exists a controversy between RAH and EFI as to EFI's liability for direct infringement and induced or contributory infringement based on the alleged acts of direct infringement by EFI's customers." *See* SAC ¶¶ 55, 62, 71, 81. These bare allegations will not suffice to "establish at least a reasonable potential" that RAH could have brought a claim for

11

contributory infringement against EFI. *See DataTern*, 755 F.3d at 905-06 (finding no implied assertion of contributory infringement against a supplier where the claim charts and remainder of the record revealed no "evidence that [the supplier's product] is not suitable for substantial non-infringing uses, or that [the supplier] knew that it was 'especially made or adapted for use in an infringement' of DataTern's patents"). For these reasons, the Court will GRANT the motion to dismiss EFI's claims of contributory infringement, with leave to amend **no later than June 21, 2019.**

### III. Motions to Seal

Finally, the Court notes that RAH redacted certain portions of the exhibits attached to the declarations filed in support of its briefs. RAH did not comply with this district's Civil Local Rule 79-5 or with this Court's Standing Order regarding filing documents under seal. In the future, all parties to this MDL must comply with Civil Local Rule 79-5 and this Court's Standing Order if they wish to file documents under seal or redact portions of any documents. Failure to follow these rules may result in summary denial of the sealing motion and "the document sought to be sealed will not be considered by the Court unless the Submitting Party files an unredacted version of the document within 7 days after the motion is denied." *See* Civ. L.R. 79-5(f)(2).

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART RAH's motion to dismiss. The Court DENIES the motion to dismiss the '444 and '704 patents from the suit. The Court GRANTS, with leave to amend, the motion to dismiss EFI's claims regarding indirect (induced and contributory) infringement. EFI must file any Third Amended Complaint **no later than June 21, 2019.**

**IT IS SO ORDERED**.

Dated: June 3, 2019

SUSAN ILLSTON
United States District Judge

12